## CATO *v.* CRYSTAL ICE COMPANY.

[68 South: 853.]

NEGLIGENCE. *Invitation.*

> The defendant ice company maintained a private way used for its own business, and constructed an open drain running down to and under this way to carry off boiling water used in the manufacture of ice, such drain being five hundred feet from the public roadway, and plaintiff having business with an employee of defendant went with his dog to defendant's plant and the dog jumped into the drain and was scalded to death. In such case defendant was not guilty of gross negligence in maintaining such a drain and was not liable to the owner of the dog for his death.

APPEAL from the circuit court of Lincoln county.
HON. D. M. MILLER, Judge.

Suit by A. C. Cato against the Crystal Ice Company. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*H. V. Wall* and *J. W. McNair*, for appellant.

We contend that appellant had an implied invitation to be where he was, and that he had a right to carry his dog with him, and the appellees were negligent in leaving a ditch of hot water that was dangerous to appellant and to his dog unprotected, so that the dog could get into it and be injured. The road that appellant was traveling was used by the general public; he therefore had a right to use that road, and it was with appellees' knowledge and consent.

We contend that if appellant had a right to be where he was, then he had a right to carry his dog with him. That appellant was impliedly invited to be where he was, and having the right to carry his dog with him, it necessarily followed that the dog was not a trespasser, but was where he had a right to be. It is a well-known fact that in hot weather a dog has a natural instinct to go into water, and this hot pool of water, left uncovered, attracted the dog, and he did go into it and was scalded to death. The dog was a very valuable animal, and we contend that the appellees are liable to appellant for the value of his dog, or at least the question of appellees' negligence in leaving the ditch of hot water unprotected should have been submitted to the jury. Also the authorities hold that neither the appellant nor the dog was a trespasser, but both were impliedly invited upon the premises of appellees; therefore appellees owed the duty to the appellant to have their premises in a reasonably safe condition to avoid injury either to appellant or the dog. It is a well-known principle of law that one person cannot invite another

on his private premises, and subject him to danger. A much higher duty is involved upon public service corporations, or individuals as to that matter, to keep their premises in such a safe condition as not to endanger the lives of persons who are impliedly invited thereon, and if this duty is due to persons, it necessarily follows that it is due to a dog that is with his master and not straying on said premises.

The evidence in this case shows that the dog was within a few feet of his master when he got into the hot water. We therefore contend the dog was not straying or running around on the premises of appellees, but was rightfully there with his master.

As to whether this case should have been submitted to the jury, and as to the question of appellees' liability, we cite the court to the case of the *Atlanta Cotton Oil Mills* v. *Coffee,* 80 Ga. 145, 44 S. E. 759; 12 American State Report, 244. In the Georgia case, Mr. Coffee went to the Oil Mills for some cotton seed hulls. The Oil Mills had previously, for some purpose put out a poisonous chemical, which was in a muddy place through which Mr. Coffee drove his horse in order to get to the hulls. The chemical in the mud so injured the horse's feet that he was unfit for service, and rendered him practically useless and without value. The court held that the Oil Mill was liable. That Coffee was invited to the mill, that his horse was invited to the mill, and that the mill owed Coffee the duty to have its premises in such a safe condition as not to injure Coffee or the horse. We claim that this case is similar, and that appellees in this case owed appellant a duty, and that duty extended to his dog, and therefore that appellees are liable.

*J. H. Sumrall,* for appellee.

It is a well-settled principle of law that, the owner of premises owes to a trespasser thereon no higher duty

than not to wilfully injure him, and this is the law where a human being is concerned, so the appellees in this case could not have owed any higher duty to this dog than they did to the owner of the dog, and the evidence showing that a safe and convenient way had been provided by the owners of the premises in the construction of the road, which passed over the ditch where the injury to the dog occurred, so that any person or vehicle could pass over said ditch on the road without coming in contact with the water in said ditch, and could not possibly come in contact with the water without leaving the roadway. See Thompson on Negligence, section 959.

Appellees were certainly not required to anticipate that any person or animal which they had reason to expect upon their premises, would leave the road and get into the water, nor would failure to guard against damage by coming into contact with the water in said ditch on any other part of the premises be negligence, as there is nothing in the evidence to show that appellees knew or should have known that it would be dangerous for any person or animal to come into contact with the water in said ditch, as it was not shown that any person or animal had ever been thus injured, although the evidence showed that the plants had been operated in this manner for a number of years, and even the evidence that this dog came to his death by reason of having come into contact with the water in said ditch, does not prove conclusively that the water was a dangerous agency, as the evidence further shows that the dog was in the water for some considerable time, and was covered with long hair which would retain the heat, death did not result until some twenty-four hours afterward, and the circumstances of the injury to the dog and his subsequent death would refute the idea that the water was such a dangerous agency as to need protection to prevent any thing coming into contact

109 Miss.—38

with it, when contained in a ditch only fourteen to sixteen inches wide and six to eight inches deep.

It might be gathered from the brief of counsel for appellant, that the place where the injury occurred to this dog should be classed as an attractive nuisance, as he states that, "the water was as clear as crystal and looked to be as cool and refreshing as water from a spring," and that, "it is a well-known fact that in hot weather a dog has a natural instinct to go into water" etc., but when you take into consideration that the point where the dog was injured was five hundred feet from a public highway, and in the midst of premises occupied by manufacturing plants, and the further fact that the evidence does not show that a cold storage plant or other business in which meats or other matter attractive to dogs were kept, as there was not, the facts in the case fail to establish circumstances which would bring this case within the class of attractive nuisances, for if it is a fact, it is certainly not a matter of common knowledge, that dogs are attracted by ice or lumber, on the other hand, the facts in the case clearly show that the dog was on the premises where he was injured, solely because he was carried there by his master, and the negligence of the master in carrying his valuable dog onto the premises, and failing to have him in leash or otherwise under his control so that he could keep him out of places of danger, was the proximate cause of injury.

In the consideration of the circumstances under which this accident occurred, there are only two propositions, which can arise, one of which must control as to the responsibility for this occurrence, first, if we assume that the dog was accompanied by his master in the sense that he was under his complete control (which is the test as to whether or not he was running at large), then, even though you cannot impute contributory negligence to a dog, any more than you

can to child of such tender years as not to be held to any degree of care, yet, like a child of tender years, when accompanied by a parent or one who is in charge or control, contributory negligence is imputed to such parent or custodian, and recovery is thereby barred, unless it can be shown that the injury was caused wilfully or by such gross carelessness as will be tantamount to wilfulness, and this is especially true where such parent or custodian is the plaintiff in an action to recover for the injury. See Thompson on Negligence, section 289.

If on the other hand the plaintiff (appellant) should concede that the dog in question was not in custody or his control to such an extent as to impute contributory negligence to him, then he was running at large in the sense contemplated by the law. See *Juliennne* v. *Mayor and Aldermen of the City of Jackson,* 69 Miss 34, *supra,* and if the dog in question was running at large he was a tresspasser and the appellees owed him no duty, except to not willfully injure him. See Thompson on Negligence, section 955.

COOK, J., delivered the opinion of the court.

A. C. Cato was the owner of a dog with a somewhat mixed ancestry—he was a cross between a bull dog and a collie. This dog inherited the instincts and characteristics of the collie strain. Mr. Cato was a cattle dealer, and therefore the dog was a valuable assistant. Just outside the city of Brookhaven are located two manufacturing plants, upon a tract of land containing about fifteen acres. One of these companies is a manufacturer of lumber; the other, the Crystal Ice Company, appellee here, was a manufacturer of ice. The northern part of the tract is occupied by the lumber plant and the southern part by the ice plant. Running east and west through this tract of land was a gravel road, constructed by the owners

of the two plants for their own convenience and for the use of all persons having any business with either of the plants. The record shows, further, that no objection had ever been made to any person traveling this road whether the person had business with the owners or not. In the manufacture of ice appellee used hot water, and to carry away the waste water from the plant an open drain was provided, extending from the ice plant down to and under the private roadway mentioned above. The drain was about six or eight inches in depth and fourteen or fifteen inches in width. Where the drain crossed the road it was conducted under the road by a culvert. The roadway was in good condition, and was entirely upon the private lands of the two companies. The drain carrying the hot water, at the place where the dog got into trouble, was something like five-hundred feet from the public highway. The plaintiff, in the prosecution of his business of a cattle dealer, having occasion to leave the public highway and entering upon the premises of the two companies for the purpose of interviewing an employee of the ice company on some business of a private nature, traveled along the private road and over the culvert. His dog was following behind, and when he reached the drain the water looked good to him, whereupon he proceeded to take a bath. The water was scalding hot, and the animal was so seriously injured thereby that death resulted. At the close of the evidence the court directed a verdict for defendant.

It has been said that "dog law" is as hard to define as "dog latin," and from an examination of the authorities we are not prepared to say that this statement is unwarranted. In 1 R. C. L., under the title, "Animals," may be found a very interesting discussion of the subject involved in this case.

If running water can be said to be an attractive nuisance, so far as dogs may be affected thereby, we think

the better view of the law makes the liability of the owner largely depend upon the proximity of the nuisance to the public highway, or to some place where the public has a legal right to go. In the present case the dangerous element seems to have been five hundred feet from the highway. This fact is important, when we come to measure the degree of care to be employed by the ice company to prevent injury to others. The company was under no obligations to exercise more than reasonable care, and we are unwilling to say that the trial court erred in holding, as a matter of law, that the evidence failed to disclose any negligence on the part of the ice company of which plaintiff can complain. We do not decide whether there was negligence shown at all; but, for the purposes of this appeal it may be conceded that, under some circumstances, the ice company might be liable for injuries caused by this open drain. In this instance it is not contended that plaintiff was invited, or that he had any business with defendant which would give him a legal right to go on the premises. Again, there was no reason why the defendant should have anticipated that plaintiff would bring his dog upon the premises, and in case he did, it is hard to see how defendant could have reasonably anticipated that the dog, a sagacious and active animal, would take a notion to take a bath in scalding water. It cannot be said that the open drain was so obviously dangerous as to impute to defendant a reckless indifference to the consequences. Unless it may be said that defendant was guilty of such gross negligence as to warrant the imputation of wantonness, it was not liable in this case.

*Affirmed.*