[Civ. No. 5476. First Appellate District, Division One.—July 27, 1926.]

## JOHN LINDHOLM, Appellant, *v.* NORTHWESTERN PACIFIC RAILROAD COMPANY (a Corporation), Respondent.

[1] Negligence—Licensees—Assumption of Risk—Duty of Owner. Where one enters the premises of another without express or implied invitation, and the object of his visit is solely for his own benefit, pleasure, convenience, or curiosity, having no relation to the business of the owner, he is at best a mere licensee, the license being enjoyed by him with its concomitant perils, and with the assumption of all risks attached to the condition of the premises or which are incident to the operation of the business conducted thereon, the owner owing him no duty except to refrain from doing him wilful or wanton injury.

[2] Id.—Action for Damages—Personal Injuries—Visitor to Shipyard—Duty of Owner to Keep Premises in Safe Condition—Licensees—Evidence.—In an action for damages for personal injuries resulting from the alleged negligence of defendant's employees while repairing certain machinery in a shipyard, which plaintiff had entered for the purpose of visiting a relative aboard a vessel which he supposed was docked in said yard, where the evidence showed without conflict that plaintiff was upon the premises of his own volition concerning a matter personal to himself and that he was not there to promote the interests of the owner his status was at best that of a mere licensee, to whom defendant owed no duty to keep the premises in a safe condition, and in the absence of such duty, no negligence can be imputed to defendant.

[3] Id.—Invited Licensee—Injuries While Pursuing Own Purpose—Liability of Owner—Evidence.—In such action, even if it be conceded that plaintiff's purpose in entering the shipyard to call upon a relative constituted him an invited licensee, where it was shown by the uncontroverted evidence that, when he discovered that the ship on which his relative was supposed to be had not arrived, he went toward another ship to ascertain when it was to arrive, and that while in pursuit of such mission he was injured, it is apparent that plaintiff, when injured, was pur-

1. See 19 Cal. Jur. 616; 20 R. C. L. 57, 69.
2. Liability of land owner to persons entering on land for their own convenience, see notes in 19 Ann. Cas. 425; Ann. Cas. 1913A, 115; 9 L. R. A. 642. See, also, 20 R. C. L. 69.

suing a purpose for his own benefit and convenience, to accomplish which he was traversing portions of said shipyards where he was neither invited nor expected to go, and where his original mission in entering said yards did not require him to be, and under such circumstances he became a bare licensee imposing no liability upon defendant.

[4] ID.—EXERCISE OF REASONABLE CARE BY OWNER TO AVOID INJURY TO LICENSEE—ABSENCE OF KNOWLEDGE OF LICENSEE'S PRESENCE—EVIDENCE.—In such action, where there was no evidence that defendant's employees were at any time aware of plaintiff's presence, the rule that the owner must exercise reasonable care to avoid injury to a bare licensee by any active or overt act of negligence is inapplicable.

[5] ID.—RIGHTS OF OCCUPANT IN POSSESSION WITH CONSENT OF OWNER AS AGAINST BARE LICENSEE.—In such action, where the evidence showed that defendant was the lawful occupant and in legal possession of that part of the shipyard where the accident occurred, and was using the same by right as against plaintiff's use thereof by sufferance, defendant was clothed with the rights of the owner, and might invoke the rule limiting the owner's liability to a bare licensee to wilful or wanton injury.

(1) 29 **Cyc.**, p. 449, n. 66, p. 450, n. 69, p. 451, n. 72. (2) 29 **Cyc.**, p. 451, n. 73. (3) 29 **Cyc.**, p. 452, n. 81. (4) 29 **Cyc.**, p. 449, n. 66. (5) 29 **Cyc.**, p. 449, n. 66.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George L. Jones, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Rothchild & Golden and Sylvester J. McAtee for Appellant.

Stanley Moore and R. W. Palmer for Respondent.

KNIGHT, J.—An appeal by plaintiff from a judgment of nonsuit in an action to recover damages for personal injuries sustained by plaintiff as a result of the alleged negligent acts of defendant's employees.

·The correctness of the trial court's ruling on the motion for nonsuit depends mainly upon the determination of the

4. See 20 R. C. L. 59, 60.

question of whether appellant, at the time he received the injuries, was, as he claims, an invited licensee upon the premises where the accident occurred, or was, as the trial court declared by its judgment of nonsuit, "a trespasser or at best a bare licensee."

The following are the facts: During the lunch hour on the day of the accident, appellant, a hoisting engineer employed by the King Coal Company, whose premises adjoin those of the Moore Shipbuilding Company in Oakland, entered the yards of said shipbuilding company for the purpose of visiting a relative aboard a vessel which he supposed was docked in said yards. The entire shipbuilding yards are inclosed by a fence, the only entrance thereto from the land side being through a gate at which a watchman is stationed, but plaintiff was allowed to enter said yards unchallenged on account of having been in there frequently on business connected with his employment by the coal company. After passing through the main gate appellant walked along a railroad track, down the center of one of the docks toward a boat which he supposed was the bark "Hecla" and on which he expected to find his kin, but after going some distance down the track he discovered he was mistaken as to the identity of the vessel. Thereupon he turned and proceeded toward a vessel, the "Pactolus," which was moored in said yards, intending to ascertain from the crew of that vessel the probable date of arrival at the yards of the "Hecla." The steamer "Cazadero," owned by respondent Northwestern Pacific Railroad Company, was at this time in the drydock of said plant being repaired by the Moore Company, and much of its machinery had been lifted out of the hold, dismantled and strewn over the dock for the purpose of allowing respondent's employees to repair the same. In order to reach a ladder hanging over the side of the "Pactolus" appellant turned at the point where he realized he was mistaken regarding the identity of the vessel supposed to be the "Hecla" and proceeded directly across the dock through the dismantled parts of the "Cazadero's" machinery toward a stringer on the edge of the dock about twenty-five or thirty feet distant from the "Pactolus'" ladder, along which stringer he meant to walk until he reached the ladder. In selecting this route it was necessary for him to follow a narrow space through the "Cazadero's"

machinery and thence to pass closely by the north end of its steam condenser, measuring some eight or ten feet square, at the other end of which three of respondent's employees were engaged in lining up the tubes by forcing a blunt rod through them with hammers. Just as appellant attempted to pass said condenser, the workmen thrust the rod through one of the tubes, striking appellant in the eye, causing a severe injury thereto which necessitated the subsequent removal of the eyeball. There was no evidence offered to show that respondent's employees were aware of appellant's presence near said condenser, nor that the course taken by him in attempting to reach the "Pactolus" was a regular passageway. Neither did the evidence show that there was a likelihood of any person being at the particular location where appellant received the injury. Appellant testified that before he attempted to pass the condenser he observed the workmen and knew the nature of the work they were engaged in, but, as he explained, it was customary when performing such work to place a lookout or to rope off a space at the end of the condenser so as to prevent persons from being injured, which in this case was not done.

[1] The determination of the question of whether the status of a person entering the premises of another is that of a bare licensee, or a licensee by invitation, turns on the nature of the business which brings the licensee upon the premises, and it is held generally in this respect that where one enters the premises of another without express or implied invitation, and the object of his visit is solely for his own benefit, pleasure, convenience, or curiosity, having no relation to the business of the owner, he is at best a mere licensee, the license being enjoyed by him with its concomitant perils, and with the assumption of all risks attached to the condition of the premises or which are incident to the operation of the business conducted thereon, the owner owing him no duty except to refrain from doing him wilful or wanton injury. (*Means* v. *Southern Cal. Ry. Co.*, 144 Cal. 473 [1 Ann. Cas. 206, 77 Pac. 1001], citing authorities from other jurisdictions; *Grundel* v. *Union Iron Works*, 141 Cal. 564 [75 Pac. 184]; *Kennedy* v. *Chase*, 119 Cal. 637 [63 Am. St. Rep. 153, 52 Pac. 33]; *Giannini* v. *Campodonico*, 176 Cal. 548 [169 Pac. 80]; *Schmidt* v. *Bauer*, 80 Cal. 565 [5 L. R. A. 580, 22 Pac. 256]; *Cleveland C. C. &*

*St. L. Ry. Co.* v. *Means,* 59 Ind. App. 383 [104 N. E. 785, 108 N. E. 375]; *Pauckner* v. *Wakem,* 231 Ill. 276 [14 L. R. A. (N. S.) 1118, 83 N. E. 202]; 2 Cooley on Torts, pp. 1265–1268; 8 Thompson on Negligence, secs. 946–949; 20 R. C. L., pp. 57 and 69.)

[2] The evidence here shows without conflict that appellant, having entered said yards with the sole object of calling upon a relative, was upon the premises of his own volition concerning a matter personal to himself and was not there to promote the interests of the owner. Therefore, under the rule above mentioned, his status was at best, as the trial court concluded, that of a mere licensee. (20 R. C. L., p. 69; *Nelson* v. *Burnham & Morrill Co.,* 114 Me. 213 [95 Atl. 1029]; *Dixon* v. *Swift,* 98 Me. 207 [56 Atl. 761]; *Norris* v. *Hugh Nawn Co.,* 206 Mass. 58 [19 Ann. Cas. 424, 31 L. R. A. (N. S.) 623, 91 N. E. 886]; *Woolwine's Admr.* v. *Chesapeake & O. R. Co.,* 36 W. Va. 329 [32 Am. St. Rep. 859, 16 L. R. A. 271, 15 S. E. 81]; *Galveston Oil Co.* v. *Morton,* 70 Tex. 400 [8 Am. St. Rep. 611, 78 S. W. 756].) As such licensee respondent owed appellant no duty to keep the premises in a safe condition; and, in the absence of such duty, no negligence can be imputed to respondent. (*Grundel* v. *Union Iron Works, supra.*)

[3] But aside from the question of whether appellant's purpose in entering said premises to call upon a relative constituted him an invitee or a bare licensee at the time he entered said yards, the uncontroverted fact as established by appellant's testimony proves that when injured he was not in pursuit of such purpose, but was then on a mission purely of his own, namely, to ascertain from the crew of another vessel the probable date of arrival of the "Hecla." The evidence is without conflict that soon after he passed through the gate of said yards and while he was in the middle of said dock he discovered that the purpose for which he entered said premises was futile; that notwithstanding such discovery he diverted his course and attempted to cross the dock by finding his way through the "Cazadero's" dismantled machinery, intending to ascertain from the crew of the "Pactolus" the probable date of arrival of the "Hecla"; and that while in pursuit of such mission he was injured. He admits that after discovering his mistake as to the identity of the vessel he could have

retraced his movements back up the dock and obtained the desired information as to the "Hecla's" arrival at the company's office, but that he did not do so because he was in a hurry to get back to his work on time.   It is therefore apparent that from the time he realized his error as to the identity of the vessel until he suffered the injury, he was pursuing a purpose for his own benefit and convenience, to accomplish which he was traversing portions of said shipyards where he was neither invited nor expected to go, and where his original mission in entering said yards did not require him to do.   Therefore, giving appellant the benefit of the most liberal construction of the evidence by assuming that, as he contends, his original purpose in going upon the premises created the status of an invited licensee, it is manifest he was not clothed with such status at the time he was injured, for he was then in pursuit of a different purpose, which was one entirely his own.   Under such circumstances he became and was clearly a bare licensee (*Herzog* v. *Hemphill,* 7 Cal. App. 116 [93 Pac. 899]; *Corbitt* v. *Spanos,* 37 Cal. App. 200 [173 Pac. 769]), and his case must be governed by the rule stated in the case of *Kennedy* v. *Chase, supra,* wherein it was said that as to an invited licensee, the duty of the owner "has relation to the object for which the right of entry is extended and is limited to responsibility for the condition of that portion of the premises required for the purposes of the visit; it does not impose liability for the want of safety at a point without those limits, and where the injured party was neither invited nor expected to go.   (1 Thompson on Negligence, c. 7, p. 308; *Zoebisch* v. *Tarbell,* 10 Allen (Mass.), 385 [87 Am. Dec. 660]; *Murray* v. *McLean,* 57 Ill. 376; *Schmidt* v. *Bauer,* 80 Cal. 565 [5 L. R. A. 580, 22 Pac. 256].)"   There the facts showed that the injured party departed from the portion of the premises where his duty required him to go, and he was injured while going about for his own convenience. The court said: "When the defendant owners permitted the plaintiff to go aboard the ship for a specific purpose, they did not give him the right, by implication or otherwise, to roam at will over their vessel for his own purposes.   They undertook that their decks should be reasonably safe where plaintiff was required by his employment to traverse them, but not elsewhere.   'We have found no support for any rule,'

says Mr. Thompson, in speaking of the rights of trespassers or mere licensee, 'which would protect those who go where they are not invited, but merely with express or tacit permission, from curiosity or motives of private convenience, in no way connected with business or their relations with the occupant.' (1 Thompson on Negligence, 303. See, also, *Redigan* v. *Boston etc. R. R. Co.,* 155 Mass. 44, 47 [14 L. R. A. 276, 28 N. E. 1133], 31 Am. St. Rep. 520, and cases there cited.)'' The rule stated in *Bush* v. *Weed Lumber Co.,* 55 Cal. App. 588 [204 Pac. 24], is to the same effect.

[4] Appellant further contends that, although his status may have been that of a mere licensee, respondent was nevertheless charged with the duty of exercising ordinary care to protect him from injury resulting from overt acts of negligence as distinguished from passive negligence such as arises from an unsafe condition of the premises, citing in support thereof, among others, the cases of *Lucas* v. *Walker,* 22 Cal. App. 296 [134 Pac. 374, 379], and *Herold* v. *P. H. Mathews Paint House,* 39 Cal. App. 489 [179 Pac. 414]. The facts of the cases just cited show, however, that the application of the rule contended for by appellant is grounded upon evidence showing that the licensor was or had good reason to be aware of the presence of the licensee in the place of danger. Under such circumstances it may be conceded that the owner is charged with the duty of exercising reasonable care to avoid injury to the licensee by any active or overt act of negligence. (20 R. C. L., pp. 59, 60.) In the instant case, there was no evidence whatever to show that respondent's employees at any time were or had reason to be aware of appellant's presence. The cases relied upon by appellant are, therefore, not in point.

[5] We find no merit in appellant's contention that respondent, not being the owner of said premises, may not invoke the rule available to an owner against bare licensees. The evidence shows that respondent was the lawful occupant and in the legal possession of that portion of the premises where the accident occurred. It was therefore using the same by right as against appellant's use thereof by sufferance, and, consequently, so far as the question of negligence is concerned, was clothed with the rights of the owner and must be treated as such. (*McLaughlin* v. *Bardsden,* 50 Mont.

177 [145 Pac. 954] ; *Downes* v. *Elmira Bridge Co.*, 179 N. Y. 136 [71 N. E. 743].)   The rule of the cases referred to by appellant on this point applies only where the status of the person seeking to invoke the doctrine which is available to an owner is no greater that that of the person against whom he endeavors to enforce such doctrine.

For the foregoing reasons we are of the opinion that the nonsuit was properly granted.   The judgment is therefore affirmed.

Tyler, P. J., and Cashin, J., concurred.